IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| COLONIAL PACIFIC LEASING CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 6:09-CV-3154-RED |
| ELITE S-W MO., INC., *et al.*, | ) ) ) | |
| Defendants | ) | |

## ORDER

Before the Court is Plaintiff Colonial Pacific Leasing Corporation's Motion for Summary Judgment (Doc. 75). For the reasons stated herein, Plaintiff Colonial Pacific Leasing Corporation's motion is **GRANTED** (Doc. 75).

## BACKGROUND

Prior to June 2009, Defendant Elite S-W Mo., Inc. (hereinafter "Elite") was in the business of renting motor vehicles to customers as a franchisee of Budget Rent-a-Car. Defendants William Roach, Jr. and Eleanor Roach owned Elite until around 2000, but since that time Elite has been owned by William Roach, III, who is the son of William Roach, Jr. and Eleanor Roach. Plaintiff Colonial Pacific Leasing Corporation (hereinafter "CPLC") is the successor-in-interest to various creditors of Defendants.

On July 23, 2001, Elite entered into a Master Loan and Security Agreement (hereinafter "MLSA") with CPLC, which states generally that "[l]oans will be made to [Elite] from time to time to finance the acquisition of motor vehicles for lease to third parties on either a short or long term basis." Under the MLSA, Elite granted a security interest to Ford Motor Credit Company in all "collateral," which the MLSA defines to include motor vehicles owned by Elite and financed by

Ford Motor Credit Co. The MLSA also stated that "[l]ender may, in its sole discretion, decline to make a Loan to Borrower." On April 14, 1992, and March 16, 1998, Defendants William Roach, Jr., William Roach, III, and Eleanor Roach all executed Continuing Guaranties whereby they guaranteed to Ford Motor Credit Company the prompt and unconditional performance and payment of all of Elite's current and future obligations and liabilities to Ford Motor Credit Company. On October 4, 2007, the Roach Defendants each signed a new guaranty of Elite obligations to CitiCapital, Ford Motor Credit Company's successor-in-interest. Around the end of October 2007, CitiCapital and Elite executed an Amended and Restated Master Loan and Security Agreement. Among other amendments, this new Security Agreement provided that "Debtor agrees and acknowledges that any Advance to or on behalf of Debtor will be in the sole discretion of [the Creditor] and that no Advance made by [the Creditor] will obligate [the Creditor] to make any additional Advance." On August 4, 2008, CitiCapital merged with Citicorp Leasing, Inc., and the surviving entity was renamed GE Capital Commercial, Inc. Effective September 26, 2008, GE Capital Commercial, Inc. assigned all of its rights, title and interest in the financing arrangement with Elite to Plaintiff CPLC, making CPLC the successor-in-interest to CitiCapital.

Elite began experiencing cash flow problems in 2006. On November 30, 2007, CitiCapital learned that Elite had been "double flooring" vehicles with Ford Motor Credit Company and Empire Bank, and that Elite had not paid a dealer for vehicles which Elite had obtained using financing from Empire Bank. Based on this information, CitiCapital determined Elite was an unsatisfactory credit risk for further loans, and placed Elite on a finance hold. Thereafter, Elite continued to attempt to work through its financial troubles. However, in 2008, Elite failed to make principal and interest payments due under the MLSA to CitiCapital. On October 8, 2008, CPLC's counsel sent a letter to

2

Elite and the Guarantors declaring a default and demanding immediate payment of the past due amounts, immediate return of the vehicle collateral, and requesting that Elite sign a voluntary surrender agreement. Elite and the Roach Guarantors responded with a proposal for disposition of the vehicles, but declined to sign the voluntary surrender agreement. On February 13, 2008, CPLC's counsel sent an additional letter to Elite and the Roach Defendants notifying them of Elite's default, terminating Elite's credit facility and demanding payment in the amount of $810,522.81, which represented the outstanding balance as of January 31, 2009.

From late 2008 through early 2009, Elite began transferring the vehicles to former Defendant Kansas City Auto Auction, Inc., d/b/a Manheim Missouri (hereinafter "Manheim"). Manheim's primary business is to sell vehicles at auctions, and it has over 80 locations across the United States, including one facility in Springfield, MO. Elite had bought and sold cars at Manheim before, and Manheim viewed Elite as its customer and the owner of the transferred vehicles, and did not believe Elite had turned the vehicles over to CPLC. As such, Manheim awaited instruction from Elite to sell the vehicles. During this time, Elite did not provide Manheim with the vehicle titles.

CPLC filed the present lawsuit on May 18, 2009, and correspondingly filed a motion for immediate possession of the vehicle collateral. With the parties' consent, the Court entered an order for immediate possession and delivery of the vehicles on June 1, 2009. On March 10, 2010, the Court entered a consent judgment in CPLC's favor and against Manheim as to the replevin claim stated in Count VI of the Amended Complaint, and thereby ruled that CPLC was entitled to possession and delivery of the vehicle collateral.

After obtaining the Court's replevin order, CPLC decided to have Manheim sell the vehicle collateral at its dealer auctions. Manheim holds two auctions each week in Springfield. These

3

auctions are "dealers only" auctions, meaning only licensed motor vehicles dealers are allowed to attend and bid on the vehicles. Manheim uses emails, telemarketing, blast faxes, websites, magazines, and catalogs to advertise its auctions, and approximately 500 people representing dealers typically show up at Manheim's Springfield auctions. In preparation for sale of Elite's vehicles, Manheim recommended the vehicles should be reconditioned, and CPLC had Manheim perform the recommended reconditioning.

On August 17, 2009, and September 1, 2009, CPLC sent Elite and the Roach Defendants notices of disposition stating CPLC intended to sell the vehicles at the Manheim auctions in Springfield. While these notices stated the vehicles would be sold at public auctions on September 10, 2009, and September 11, 2009, Manheim actually sold vehicles at private auctions on September 17, 2009, and October 15, 2009. The net proceeds from the sales of the vehicles was $493,538.43, which CPLC applied to Elite's outstanding balance. After the sale, the remaining outstanding principal balance due from Elite was $294,073.80, plus interest.

## **ANALYSIS**

Plaintiff CPLC has moved for summary judgment on Defendants' counterclaim and on its loan deficiency claims as asserted in Counts I-V of the Amended Complaint. Defendants do not contest the motion for summary judgment as to their counterclaim, but Defendants do contest Plaintiff's motion as it relates to the loan deficiency claims. Specifically, Defendants argue the notice of disposition was insufficient, and the sale of the vehicles was not commercially reasonable.

**I.     Defendants' Counterclaim**

Defendants' counterclaim asserted Plaintiff and its predecessors-in-interest improperly withheld financing under the MLSA. However, Defendants conceded CPLC's entitlement to

4

summary judgment on their counterclaim in response to the present motion. *See* Defs.' Objection, Resp. and Suggestions in Opp'n to Pl.'s Mot. for Summ. J. at 13 ("Defendants do not contest that portion of the Plaintiff's motion for summary judgment directed to the issue as to whether there had been a breach of contract by Plaintiff due to failure to fulfill commitments under the loan agreement providing for [] financing of the business of defendant Elite."). On review, it appears summary judgment would be proper even without the concession. As noted, Defendants' counterclaim alleges that Plaintiff's predecessor-in-interest improperly cancelled extensions of credit which it previously committed to provide. While the parties' financing agreement left open the possibility for continued future financing, it also provided that the decision to advance additional funds was in the lender's discretion.[1] There is no evidence that CPLC or any of its predecessors-in-interest acted in bad faith; rather, the undisputed facts are that CPLC's predecessor placed a hold on Elite's financing when it learned that Elite was in serious financial trouble and was "double flooring" its vehicles with other financiers. Such activities placed CPLC's predecessor-in-interest's security interests in the vehicle collateral in jeopardy. Given the facts and Defendants' concession, summary judgment is warranted in CPLC's favor. *See Cordry v. Vanderbil Mortgage & Fin., Inc.*, 445 F.3d 1106, 1110-12 (8th Cir. 2006).

## II.     Plaintiffs' Loan Deficiency Claims

Defendants raised two issues regarding CPLC's motion for summary judgment on the loan deficiencies: (1) whether the notice of sale was sufficient, and (2) whether the sale was

---

[1]
The terms of the MLSA explicitly provided that "Lender may, in its sole discretion, decline to make a Loan to Borrower." Likewise, the Amended and Restated MLSA executed by Elite in 2007 provides that "Debtor agrees and acknowledges that any Advance to or on behalf of Debtor will be in the sole discretion of [Plaintiff's predecessor-in-interest] and that no Advance made by [Plaintiff's predecessor-in-interest] will obligate [Plaintiff's predecessor-in-interest] to make any additional Advance."

5

commercially reasonable.

### A. Notice of Sale

Defendants first argue CPLC's notice of sale was deficient because it was untimely, stated the wrong dates, and stated the auction would be public instead of private.

Under Missouri law, "[t]he contents of a notification of disposition are sufficient if the notification: (A) [d]escribes the debtor and the secured party; (B) [d]escribes the collateral that is the subject of the intended disposition; (C) [s]tates the method of intended disposition; (D) [s]tates that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting; and (E) [s]tates the time and place of a public disposition or the time after which any other disposition is to be made." MO. ANN. STAT. § 400.9-613. Section 400.9-613 goes on to state that "[w]hether the contents of a notification that lacks any of the information specified in paragraph (1) are nevertheless sufficient is a question of fact," and "[t]he contents of a notification providing substantially the information specified in paragraph (1) are sufficient, even if the notification includes: (B) minor errors that are not seriously misleading." *Id.*

Defendants do not challenge whether CPLC complied with the majority of the notice requirements. On review, it is apparent that the notice provided to Elite clearly states that Elite is the debtor, lists the vehicles that will be sold, states that the property will be sold at an auction starting on September 10, 2009, states that the auction will be conducted by Manheim Missouri in Springfield, MO, and states that Elite is entitled to an accounting of the unpaid indebtedness. However, Defendants argue the notice was insufficient because it stated the property would be sold "to the highest qualified bidder in *public*," when the property was in fact sold via private auction, and because the "[s]tart [d]ate" listed on the notice, September 10, 2009, was incorrect. CPLC

6

admits the notice erroneously stated there would be a public auction of the vehicles at Manheim on September 10, 2009, when in fact the vehicles were sold at Manheim's private dealer-only auctions on September 17, 2009, and October 15, 2009. However, CPLC argues the notice was nonetheless sufficient. While Defendants are correct that whether the notice was sufficient in spite of these errors is a "question of fact," the facts in this instance are not in dispute, and summary judgment is proper. *See Noritsu Am. Corp. v. Optic Shutter, Inc.*, 733 F. Supp. 310 (E.D. Mo. 1989).

Regarding Defendants' argument as to the timing of the notice, "notice of a private sale may simply state the date after which the collateral will be sold," while "notice of a public sale must include the time and place of sale." *First Missouri Bank & Trust Co. of Creve Coeur v. Newman*, 680 S.W.2d 767, 769 (Mo. Ct. App. 1984); *see also* MO. ANN. STAT. § 400.9-613(1)(E). Here the parties do not dispute the auction was actually a private auction, meaning the notice only needed to state the date after which the vehicles would be sold. Since the notice listed September 10, 2009, as the "[s]tart [d]ate" for the auction, and the vehicles were sold after that date, the notice was sufficient on this point. *See RWR, Inc. v. DFT Trucking, Inc.*, 899 S.W.2d 875, 878 (Mo. Ct. App. 1995) ("A sufficient notice of private sale is one which states 'the date after which the collateral will be sold'"). Likewise, Defendants' argument that they did not receive at least 10 days notice is also without merit, as the notices were sent on August 17, 2009, and September 1, 2009, and the vehicles were not sold until September 17, 2009, at the earliest. Finally, regarding Defendants' argument that they were prejudiced by the notice stating it would be a public auction when the auction was in fact private, Defendants conceded they knew and understood the vehicles were to be sold at Manheim in Springfield. Defendants had bought and sold vehicles at Manheim's auctions in the past and were familiar with its processes, and Defendants concede they were aware that Manheim conducts private

7

"dealer-only" auctions. The long and short of this is that Defendants were well aware of how Manheim conducted its auctions. Defendants actually delivered the cars to Manheim in the first place, and the auctions in question were conducted in the normal manner for a Manheim auction. Given these concessions, it would be a stretch to say Defendants were prejudiced by the erroneous description of the auction as "public" instead of private. As such, it would seem these errors are the type of "minor errors that are not seriously misleading" that do not ultimately effect the legal sufficiency of the notice under the statute. *See* MO. ANN. STAT. § 400.9-613(1)(E).

### B. Commercial Reasonableness

Defendants also argue CPLC did not dispose of the vehicle collateral in a commercially reasonable manner. Under Missouri law, "[a] disposition of collateral is made in a commercially reasonable manner if the disposition is made: (1) [i]n the usual manner on any recognized market; ... or (3) [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition." MO. ANN. STAT. § 400.9-627(b). Here, CPLC sold the vehicles at Manheim's dealers-only auctions. Defendants have admitted that Manheim's primary business is to sell vehicles at auction, that Manheim is the largest vehicle auction company in the United States, that dealers frequently buy and sell vehicles through Manheim's auctions, that hundreds of dealers typically participate in each of Manheim's auctions in Springfield, that Elite itself bought and sold vehicles through Manheim, and that Elite had transferred the 67 vehicles at issue to Manheim and expected Manheim to sell the vehicles. In other words, CPLC's disposition is in conformity with Elite's own chosen method of disposition. Elite also concedes that Manheim performed some reconditioning on the vehicles prior to sale.

Defendants argue that CPLC delayed the sale of the vehicles unreasonably, and therefore the

8

cars diminished in value. However, while Elite turned the cars over to Manheim in October 2008, Elite did not sign a voluntary surrender agreement and the cars remained on Manheim's lot. Elite admits that Manheim believed Elite was still the owner (and that Elite had not turned the vehicles over to CPLC), and that Manheim "awaited instruction from Elite to sell the vehicles and would not sell the vehicles without Elite's instruction to sell the vehicles." Elite did not instruct Manheim to sell the vehicles, and CPLC was forced to file the present suit. CPLC did not have the ability to sell the vehicles in question until this Court ordered immediate possession and delivery of the vehicles to CPLC on June 1, 2009, shortly after CPLC filed suit on May 18, 2009. After the Court's order, CPLC had some reconditioning work performed on the vehicles at Manheim's suggestion. Ultimately, the vehicles were sold within 5 months of CPLC gaining possession.

Finally, citing *Consumer Fin. Corp. v. Reams*, 158 S.W.3d 792, 797 (Mo. Ct. App. 2005), Defendants argue CPLC "must prove that every aspect of the disposition [of the vehicle collateral] was commercially reasonable," and that CPLC has not done so in this instance. The *Consumer Fin. Corp.* case does in fact state that "[a] secured party ... has the burden to prove every aspect of the disposition of collateral when commercial reasonableness is challenged," but the case is distinguishable from the present situation. First, the creditor in *Consumer Fin. Corp.* only provided the bill of sale as evidence of the reasonableness of the post-repossession sale, which the court found was insufficient to meet the burden of proof that the sale was conducted in a commercially reasonable manner. The court in that case suggested other means by which said proof could have been accomplished, including: evidence regarding whether other lenders utilized the implemented method of sale and that particular auction venue, evidence of what efforts were needed to prepare the collateral for sale, and evidence that the price received for the collateral was within the expected

9

range for vehicles in terms of its model, age and condition. Here, CPLC provided evidence that it utilized the means that Elite itself used to dispose of vehicles, that Manheim was a nationwide auctioneer specializing in selling vehicles, that hundreds of dealers are typically present at any of Manheim's bi-weekly auctions, and that the vehicles were reconditioned prior to sale. While there was no evidence as to the expected sale price of the vehicles, Elite has not seriously challenged that the sales prices for the vehicles as of the date of sale should have been more. Moreover, Missouri statute provides that "[t]he fact that a greater amount could have been obtained by a ... disposition ... at a different time or in a different method from that selected ... is not of itself sufficient to preclude the secured party from establishing that the ... disposition ... was made in a commercially reasonable manner." MO. ANN. STAT. § 400.9-627(a). Section 400.9-627(b) states that a disposition is commercially reasonable if made in "the usual manner on any recognized market," or "[o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject the disposition." As noted, CPLC disposed of the vehicles in the same manner which Elite itself had also sold its vehicles in the past.

Based on the undisputed evidence before the Court, it appears CPLC's disposition of the vehicles was done in a commercially reasonable manner.

## **CONCLUSION**

For the reasons stated herein, Plaintiff Colonial Pacific Leasing Corporation's Motion for Summary Judgment is **GRANTED** (Doc. 75) as follows:

1. Summary judgment is entered in Plaintiff's favor on Defendants' counterclaim.

2. Summary judgment is entered in Plaintiff's favor against all Defendants on the claims asserted in Counts I-V of the Amended Complaint seeking recovery of the

loan deficiency in the principal amount of $294,073.80, plus interest.

**IT IS SO ORDERED**.

DATED: August 4, 2010  /s/ Richard E. Dorr
RICHARD E. DORR, JUDGE
UNITED STATES DISTRICT COURT